Jonathan O. Hafen (6096) (jhafen@parrbrown.com)
Jeffery A. Balls (12437) (jballs@parrbrown.com)
Michael S. Lehr (16496) (mlehr@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750

*Attorneys for Court-Appointed Receiver Wayne Klein*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>Plaintiff,<br>v.<br><br>MATTHEW SHEPARD, an individual,<br><br>Defendant. | **COMPLAINT**<br><br>**(Ancillary to Case No. 2:15-cv-00828)**<br><br>Civil No. 2:19-cv-00533-DBP<br><br>Magistrate Judge Dustin B. Pead |

R. Wayne Klein, the Court-Appointed Receiver of RaPower-3, LLC ("RaPower"), International Automated Systems Inc. ("IAS"), LTB1 LLC ("LTB1") their subsidiaries and affiliates,[1] and the assets of Neldon Johnson ("Johnson") and R. Gregory Shepard ("Shepard"),[2] (the "Receiver" or "Plaintiff")  in the case styled as *United States v. RaPower-3, LLC, et al.*,

---

[1] Collectively, unless stated otherwise, RaPower, IAS, LTB1, and all subsidiaries and affiliated entities are referred to herein as "Receivership Entities." The subsidiaries and affiliated entities are: Solco I, LLC ("Solco"); XSun Energy, LLC ("XSun"); Cobblestone Centre, LC ("Cobblestone"); LTB O&M, LLC; U-Check, Inc.; DCL16BLT, Inc.; DCL-16A, Inc.; N.P. Johnson Family Limited Partnership ("NPJFLP"); Solstice Enterprises, Inc. ("Solstice"); Black Night Enterprises, Inc. ("Black Night"); Starlight Holdings, Inc. ("Starlight"); Shepard Energy; and Shepard Global, Inc ("Shepard Global").
[2] Collectively, RaPower, IAS, LTB1, Shepard, and Johnson are referred to herein as "Receivership Defendants."

1

Case No. 2:15-cv-00828 (D. Utah) (Nuffer, J.) (the "Civil Enforcement Case"), hereby files this Complaint against Matthew Shepard ("Matthew Shepard")

## STATEMENT OF THE CASE

1. Receivership Defendants were operated as an abusive tax fraud.[3] The United States alleged, and the Court found, among other things, that the Receivership Defendants operated a massive tax fraud.[4] The whole purpose of the Receivership Entities was to enable funding for Neldon Johnson and his family.[5] Matthew Shepard received, directly or indirectly, more than $141,763.22 from Receivership Entities. The transfers to Matthew Shepard were in furtherance of the massive tax fraud or loans from Shepard Global and without any legally recognized value for the transferred money. The Receiver seeks to recover, for the benefit of the Receivership Estate, the amounts improperly transferred to Matthew Shepard.

## PARTIES, JURISDICTION AND VENUE

2. Pursuant to a Receivership Order entered on October 31, 2018 in the Civil Enforcement Case (the "Receivership Order"),[6] Plaintiff is the duly-appointed Receiver for Receivership Entities.[7]

3. Upon information and belief, Defendant Matthew Shepard is a resident of or is domiciled in the State of Utah. He is the son of Receivership Defendant Greg Shepard.

---

[3] *See Findings of Fact and Conclusions of Law*, Civil Enforcement Case, Docket No. 467, at 1 ("FFCL"), filed Oct. 4, 2018.
[4] *Amended and Restated Judgment*, Civil Enforcement Case, Docket No. 507, filed Nov. 13, 2018; *see also* FFCL. The Receivership Defendants have filed notices of appeal, which are pending.
[5] FFCL at 128.
[6] Civil Enforcement Case, Docket No. 490. A Corrected Receivership Order, which corrected formatting errors, was entered the next day, Docket No. 491.
[7] Civil Enforcement Case, Docket No. 636. The assets of 12 of these affiliates had been frozen by the initial Receivership Order.

4.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1367, 754.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 754, 1391(b).

## FACTS

### The Abusive Tax Scheme

6.     As the Court found in the Civil Enforcement Case: "For more than ten years, the Receivership Defendants promoted an abusive tax scheme centered on purported solar energy technology featuring 'solar lenses' to customers across the United States. But the solar lenses were only the cover story for what the Receivership Defendants were really selling: unlawful tax deductions and credits."[8]

7.     Receivership Defendants sold solar lenses emphasizing their purported tax benefits. Customers were told that they could "zero out" their federal income tax liability by buying enough solar lenses and claiming both a depreciation deduction and solar energy tax credit for the lenses.

8.     The purported solar energy technology and solar lenses, however, did not work and could not generate energy.

9.     Specifically, the Court found that the "purported solar energy technology is not now, has never been, and never will be a commercial grade solar energy system that converts sunlight into electrical power or other useful energy" and "[t]he solar lenses do not, either on

---

[8] *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership*, Civil Enforcement Case, Docket No. 636 at 4, quoting FFCL at 1.

their own or in conjunction with other components, use solar energy to generate marketable electricity."[9]

10. Notwithstanding the fact the solar lenses and technology never worked, Receivership Defendants continued to sell solar lenses to customers emphasizing that customers would qualify for depreciation deductions and/or the solar energy tax credit.

11. Between 45,205 and 49,415 solar lenses were sold to customers.[10] Receivership Defendants' own transaction documents and testimony at trial showed that the gross receipts received by Receivership Defendants were at least $32,796,196 and possibly much more.[11]

12. These lens sales constituted a massive tax fraud.[12] None of these solar lenses ever met the necessary elements to qualify for depreciation deductions or the solar energy tax credit.

13. Indeed, "[h]undreds, if not thousands" of customer lenses were not even removed from the shipping pallets.[13]

14. Based on these facts and others, the Receivership Defendants were enjoined from promoting their abusive solar energy scheme, were ordered to disgorge their gross receipts, and were required to turn over their assets and business operations to the Receiver.[14]

15. The Court held that the "whole purpose of . . . the Receivership Entities . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities

---

[9] FFCL at 48.
[10] *Id*. at 14.
[11] *Id*. at 15.
[12] *Id*.
[13] *Id*. at 55-56.
[14] *Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership*, Civil Enforcement Case, Docket No. 636 at 4, citing *Memorandum Decision and Order Freezing Assets and to Appoint a Receiver*, Civil Enforcement Case, Docket No. 444, filed August 22, 2018.

Johnson created, controls, and owns . . . including [Johnson-controlled affiliates]. Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[15]

16. Receivership Defendant Greg Shepard was the self-proclaimed "Chief Director of Operations" for RaPower. His primary role was to promote the company and sell lenses.

17. Greg Shepard was paid for his work promoting RaPower and IAS through Shepard Global.

18. Greg Shepard's promotion and sales focused on helping customers "zero out" their federal income tax. Indeed, Greg Shepard told customers how to complete their tax returns "properly" to claim the tax benefits purportedly associated with buying solar lenses.

19. Greg Shepard even advised customers under audit on how to respond to the IRS to defend disallowed and lens-related depreciation deductions and solar energy tax credits.

20. Greg Shepard knew, or had reason to know, that the statements he was making were false or fraudulent and that customers were not allowed the depreciation deduction or solar energy tax credit.[16]

21. For his role in the solar energy scheme, Greg Shepard received at least $702,001.00 either directly or through Shepard Global.[17]

---

[15] *Id.* citing FFCL and *Receiver's Report and Recommendation on Inclusion of Affiliates and Subsidiaries in Receivership Estate*, Civil Enforcement Case, Docket No. 581.
[16] *Id.* at 43.
[17] *Id.* at 16.

**Defendant Matthew Shepard's Involvement with Receivership Entities**

22.     Upon information and belief, Matthew Shepard was knowledgeable about the operations of Receivership Entities. He sold solar lenses, was an officer of Shepard Global, and is the son of Greg Shepard.

23.     Matthew Shepard was an insider of Shepard Global.

24.     At all times relevant hereto, the Receivership Entities were insolvent or had assets that were unreasonably small in relation to transactions in which they were involved.

25.     Matthew Shepard knew that the Receivership Entities were insolvent at the time that all transfers in this Complaint were made. Specifically, he knew or should have known that:

  a.     IAS's audited financial statements showed that IAS had never made any sales of any products, had not generated a profit since its 1986 inception, and had an accumulated deficit of more than $40 million;

  b.     RaPower's revenue came from the sales of solar lenses to customers and that RaPower had promised that those lens purchasers would receive more in revenue from electricity generated from those solar lenses than what purchasers had paid for the lenses. As a result, if those lenses never generated any revenue from the sales of electricity, RaPower would be liable to those lens purchasers for the amount the customers paid for the lenses and for bonuses promised by RaPower;

  c.     Shepard Global's revenue came from sales and promotion of fraudulent solar technology and that Shepard Global and Greg Shepard were deeply in debt when the transfers were made.

**Amounts Transferred to Defendant Matthew Shepard**

26.  Defendant Matthew Shepard received $12,200.00 from IAS; $20,408.22 from RaPower; and $109,155.00 from Shepard Global, (the "Transfers"). A document summarizing the $141,763.22 in Transfers is attached hereto as Exhibit 1.

27.  On information and belief, Matthew Shepard did not take the Transfers in good faith and/or did not transfer anything of a reasonably equivalent value for the Transfers.

28.  The Transfers were in furtherance of the fraud scheme.

29.  Matthew Shepard has not repaid the Transfers to the Receiver or the Receivership Entities.

30.  Accordingly, Matthew Shepard owes the Receivership Entities $141,763.22.

**FIRST CLAIM FOR RELIEF**
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(a) and 25-6-303)*

31.  The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

32.  The Receivership Entities and Greg Shepard were engaged in an enterprise with all of the characteristics of a fraud scheme.

33.  The Receivership Entities and Greg Shepard made the Transfers to Matthew Shepard in furtherance of the fraud scheme.

34.  Each Receivership Entity and Greg Shepard had at least one creditor at the time that the Transfers were made.

35.  At all relevant times hereto, Matthew Shepard was an insider of Shepard Global.

36. At all relevant times hereto, Receivership Entities and Greg Shepard were insolvent.

37. The Transfers were paid and any obligations to Matthew Shepard incurred with actual intent to hinder, delay or defraud a creditor of the Receivership Entities.

38. Pursuant to Utah Code Ann. §§ 25-6-5(1)(a) and 25-6-8 or §§ 25-6-202(1)(a) and 25-6-303, the Receiver may avoid and recover the Transfers paid to Matthew Shepard.

**SECOND CLAIM FOR RELIEF**
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(b) and 25-6-303)*

39. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

40. The Receivership Entities and Greg Shepard were engaged in an enterprise that has all of the characteristics of a fraud scheme.

41. The Receivership Entities and Greg Shepard paid the Transfers to Matthew Shepard in furtherance of the fraud scheme.

42. Each Receivership Entity and Greg Shepard had at least one creditor at the time that the Transfers were made.

43. The Transfers were paid or the obligations to Matthew Shepard were incurred by the Receivership Entities and Greg Shepard without receiving a reasonably equivalent value in exchange for the Transfers or obligations.

44. At the time the Transfers were paid, the Receivership Entities and Greg Shepard (a) were engaged or was about to be engaged in a business or transaction for which the remaining assets of the Receivership Entities were unreasonably small in relation to the business

or transaction; or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts became due.

45. Pursuant to Utah Code Ann. §§ 25-6-5(1)(b) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(b) and 25-6-303, the Receiver may avoid and recover the Transfers paid to Matthew Shepard.

### THIRD CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-6(1) and 25-6-8 or Utah Code Ann. §§ 25-6-203(1) and 25-6-303)*

46. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

47. The Receivership Entities and Greg Shepard were engaged in a fraud scheme.

48. The Receivership Entities and Greg Shepard paid the Transfers to Matthew Shepard in furtherance of the fraud scheme.

49. Each Receivership Entity and Greg Shepard had at least one creditor at the time that the Transfers were made or the obligation to Matthew Shepard was incurred.

50. The Transfers were paid or the obligation to Matthew Shepard was incurred by the Receivership Entities and Greg Shepard without the Receivership Entities receiving a reasonably equivalent value in exchange for the Transfers or obligation.

51. The Receivership Entities and Greg Shepard were each insolvent at the time the Transfers were paid or the obligation was incurred, or became insolvent as a result of the Transfers or the obligation incurred.

52. Pursuant to Utah Code Ann. §§ 25-6-6(1) and 25-6-8 or Utah Code Ann. §§ 25-6-203(1) and 25-6-303, the Receiver may avoid and recover the Transfers to Matthew Shepard.

## FOURTH CLAIM FOR RELIEF
*(Avoidance of Fraudulent Transfers Under Utah Code Ann. §§ 25-6-6(2) and 25-6-8 or Utah Code Ann. §§ 25-6-203(2) and 25-6-303)*

53. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

54. The Receivership Entities and Greg Shepard were engaged in a fraud scheme.

55. The Transfers were made as part of and in furtherance of a fraud scheme.

56. Each Receivership Entity and Greg Shepard had at least one creditor at the time that the Transfers were made.

57. Matthew Shepard was an insider of Shepard Global, a Receivership Entity.

58. The Transfers were made to the Matthew Shepard for an antecedent debt.

59. The Receivership Entities and Greg Shepard were insolvent at the time the Transfers were made and, on information and belief, Matthew Shepard had reasonable cause to believe that the Receivership Entities and Greg Shepard were insolvent.

60. Pursuant to Utah Code Ann. §§ 25-6-6(2) and 25-6-8 or Utah Code Ann. §§ 25-6-203(2) and 25-6-303, the Receiver may avoid and recover the Transfers made to the Matthew Shepard.

## FIFTH CLAIM FOR RELIEF
*(Breach of Fiduciary Duty)*

61. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

62. As a corporate officer of Shepard Global, Matthew Shepard was in a fiduciary relationship with the company.

63. Matthew Shepard breached his fiduciary duty, and acted in furtherance of the fraud scheme, by accepting or causing the Transfers to be made.

64. The Transfers damaged Shepard Global.

## SIXTH CLAIM FOR RELIEF
*(Unjust Enrichment)*

65. The Receiver re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

66. The Transfers were comprised of property of Receivership Entities and were made by Receivership Entities and Greg Shepard in furtherance of the fraud scheme.

67. The Transfers conferred a benefit upon Matthew Shepard.

68. Matthew Shepard knowingly benefitted from the Transfers.

69. Allowing Matthew Shepard to retain the Transfers would unjustly enrich him and would be inequitable.

70. Absent return of the Transfers, the Receivership Estate will be damaged by Matthew Shepard's unjust enrichment and may have no adequate remedy at law.

71. Matthew Shepard must disgorge the amount of the Transfers.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for Judgment against Matthew Shepard as follows:

A. Pursuant to the Receiver's First Claim for Relief, judgment against Matthew Shepard avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(1) and 25-6-8 or §§ 25-6-202(1)(a) and 25-6-303, and permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $141,763.22.

B.   Pursuant to the Receiver's Second Claim for Relief, judgment against Matthew Shepard avoiding the Transfers under Utah Code Ann. §§ 25-6-5(a)(2) and 25-6-8 or Utah Code Ann. §§ 25-6-202(1)(b) and 25-6-303, and permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $141,763.22.

C.   Pursuant to the Receiver's Third Claim for Relief, judgment against Matthew Shepard avoiding the Transfers under Utah Code Ann. §§ 25-6-6(1) and 25-6-8 or Utah Code Ann. §§ 25-6-203(1) and 25-6-303, and permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $141,763.22.

D.   Pursuant to the Receiver's Fourth Claim for Relief, judgment against Matthew Shepard avoiding the Transfers under Utah Code Ann. §§ 25-6-6(2) and 25-6-8 or Utah Code Ann. §§ 25-6-203(2) and 25-6-303, and permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $141,763.22.

E.   Pursuant to the Receiver's Fifth Claim for Relief, a judgment permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $141,763.22.

F.   Pursuant to the Receiver's Sixth Claim for Relief, judgment against Matthew Shepard permitting Plaintiff's recovery of the value of the: (1) Transfers in the total amount of $141,763.22; (2) imposition a constructive trust for the benefit of the receivership estate on any and all Transfers; and (3) disgorgement of the value of the Transfers.

G.   Judgment for pre-judgment interest, costs, and fees, including reasonable attorney's fees, as may be allowed by law.

H.   For such other and further relief as the Court deems just and proper.

DATED this 26th day of July, 2019.

PARR BROWN GEE & LOVELESS, P.C.

/s/ Michael S. Lehr
Jonathan O. Hafen
Jeffery A. Balls
Michael S. Lehr
*Attorneys for R. Wayne Klein, Receiver*