THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW SHEPARD,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00533-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This is an ancillary action to *United States v. RaPower-3, LLC et al.*, 2:15-cv-00828-DN-DAO (D. Utah) ("Civil Enforcement Case"), brought by Plaintiff R. Wayne Klein, the Court-Appointed Receiver ("Receiver") of RaPower-3, LLC ("RaPower"), International Automated Systems Inc. ("IAS"), LTB1, LLC ("LTB1"), their subsidiaries and affiliates,[1] and the assets of Neldon Johnson ("Johnson") and R. Gregory Shepard.[2] In the Civil Enforcement Case, the Receivership Entities were found to be operated as an abusive tax fraud to enable funding for Johnson and his family. The Receiver's Complaint in this case asserts six causes of action against Defendant Matthew Shepard to recover $141,763.22 in commission payments and other money transfers made to him by three Receivership Entities (IAS, RaPower,

---

[1] Collectively, unless stated otherwise, RaPower, IAS, LTB1, and all subsidiaries and affiliated entities are referred to herein as "Receivership Entities." The subsidiaries and affiliated entities are: Solco I, LLC ("Solco"); XSun Energy, LLC ("XSun"); Cobblestone Centre, LC ("Cobblestone"); LTB O&M, LLC; U-Check, Inc.; DCL16BLT, Inc.; DCL-16A, Inc.; N.P. Johnson Family Limited Partnership; Solstice Enterprises, Inc.; Black Night Enterprises, Inc.; Starlite Holdings, Inc.; Shepard Energy; and Shepard Global, Inc. ("Shepard Global").

[2] Collectively, RaPower, IAS, LTB1, R. Gregory Shepard, and Johnson are referred to herein as the "Receivership Defendants."

and Shepard Global) relating to the marketing, promotion, and sale of solar lenses to customers, which perpetuated and expanded the Receivership Defendant's fraudulent scheme.[3]

The Receiver seeks summary judgment on his avoidance of fraudulent transfers claims under Utah's Uniform Voidable Transactions Act ("UVTA").[4] The Receiver argues that the transfers IAS, RaPower, and Shepard Global made to Defendant are voidable because they were made with actual intent to hinder, delay, or defraud creditors.[5] The Receiver also argues that certain transfers made by IAS and RaPower are voidable because they were made at a time when IAS and RaPower were insolvent, and IAS and RaPower did not receive reasonably equivalent value in exchange for the transfers.[6]

The Undisputed Material Facts demonstrate that the $141,763.22 in transfers that IAS, RaPower, and Shepard Global made to Defendant were made with actual intent to hinder, delay, or defraud creditors. And the Undisputed Material Facts demonstrate that IAS, RaPower, and Shepard Global did not receive reasonably equivalent value from the transfers to Defendant. Therefore, the Receiver's Motion for Partial Summary Judgment[7] is GRANTED in part. It is unnecessary to address the Receiver's other claims and arguments.

---

[3] Complaint, docket no. 2, filed July 26, 2019.

[4] Receiver's Motion for Partial Summary Judgment, docket no. 38, filed Feb. 24, 2022. The UVTA became effective on May 9, 2017. The governing law prior to the UVTA was the Uniform Fraudulent Transfer Act. The statutes are substantially similar; any differences do not affect the disposition of the Receiver's Motion for Partial Summary Judgment. The statutes are referred to collectively herein as the UVTA, but citations to both statutes are given.

[5] Id. at 17-27.

[6] Id. at 27-29.

[7] Docket no. 38, filed Feb. 24, 2022.

## Contents

UNDISPUTED MATERIAL FACTS ............................................................................... 3
 The Receivership Defendants' fraudulent scheme ............................................. 3
 The Civil Enforcement Case against the Receivership Defendants...................... 7
 Defendant's involvement with the Receivership Defendants and Receivership Entities . 10
 Financial condition of certain Receivership Entities ......................................... 15
  IAS ........................................................................................................ 15
  RaPower.................................................................................................. 16
STANDARD OF REVIEW ......................................................................................... 17
DISCUSSION ............................................................................................................ 19
 The factual record of the Civil Enforcement Case is incorporated in this ancillary
  proceeding............................................................................................ 19
 The Receiver has standing to seek avoidance of the transfers the Receivership Entities
  made to Defendant ............................................................................... 21
 The Receiver's Complaint sufficiently pleads the $10,200.00 loan Defendant received
  from Shepard Global as an alleged fraudulent transfer ......................... 24
 IAS, RaPower, and Shepard Global's insolvency are relevant, but proving insolvency is
  not necessarily required ....................................................................... 25
 IAS, RaPower, and Shepard Global made the transfers to Defendant with actual intent to
  hinder, delay, or defraud creditors ...................................................... 27
 Genuine issues of fact exist regarding whether Defendant took the transfers in good faith,
  but this does not preclude summary judgment in favor of the Receiver .............. 31
 IAS, RaPower, and Shepard Global did not receive reasonably equivalent value from the
  transfers to Defendant ......................................................................... 33
 The Receiver is entitled to prejudgment interest ............................................ 37
ORDER...................................................................................................................... 37

## UNDISPUTED MATERIAL FACTS[8]

### The Receivership Defendants' fraudulent scheme

1. Johnson claimed to have invented solar energy technology, which involves solar

lenses placed in arrays on towers.[9]

---

[8] Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Material Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Additionally, self-serving and conclusory assertions within an affidavit or declaration are not accepted for purposes raising a genuine dispute of a material fact. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

[9] Findings of Fact and Conclusions of Law ("FFCL") ¶¶ 2-3 at 2, ECF no. 467 in Civil Enforcement Case, filed Oct. 4, 2018, docket no. 38-2, filed Feb. 24, 2022.

2.      To make money from this purported technology, Johnson sold a component of the technology: the solar lenses.[10]

3.      Through a multi-level marketing model (using affiliated entity RaPower), lenses were sold to hundreds of investors across the nation.[11]

4.      IAS or RaPower agreed to build solar towers and install the customers' lenses at a site determined by IAS or RaPower.[12]

5.      When customers purchased lenses, the customers also signed an operations and maintenance agreement with LTB1, with LTB1 agreeing to operate and maintain the customers' lenses to produce revenue.[13]

6.      LTB1 was to make quarterly payments to the lens purchasers, representing a portion of the revenues earned from the operation of the solar lenses.[14]

7.      No customer ever decided to buy a lens and then lease it to an entity other than LTB1.[15]

8.      Customers never took direct physical possession of their lenses. Because the Receivership Defendants did not track which lens belonged to which customer, there was no way for a customer to know which specific lens they owned. No customer has provided testimony that the owned lenses could be identified.[16]

---

[10] *Id*. ¶ 27 at 6.

[11] *Id*. ¶ 44 at 8, ¶ 49 at 9.

[12] *Id*. ¶ 124 at 23, ¶ 126 at 23, ¶ 133 at 24, ¶¶ 144-145 at 26.

[13] *Id*. ¶ 16 at 4, ¶¶ 150-152 at 27.

[14] *Id*. ¶ 153 at 27.

[15] *Id*. ¶ 336 at 64.

[16] *Id*. ¶¶ 337-338 at 64.

9.      A bonus incentive program paid commissions or referral fees to persons who persuaded others to purchase solar lenses.[17]

10.     Johnson illustrated his idea as follows:[18]



11.     Johnson's entities retained the lenses and controlled what happened to them (if anything).[19]

12.     The Receivership Defendants emphasized how little any customer would have to do with respect to "leasing out" their lenses: "[s]ince LTB[1] installs, operates and maintains your lenses for you, having your own solar business couldn't be simpler or easier."[20]

13.     The Receivership Defendants knew that they sold solar lenses to individuals who generally work full-time jobs, like teachers, school administrators, coaches, and others. They knew, or had reason to know, that their customers do not have special expertise in the solar energy industry.[21]

---

[17] *Id*. ¶¶ 28-30 at 6.

[18] *Id*. ¶ 292 at 57.

[19] *Id*. ¶ 339 at 64.

[20] *Id*. ¶ 340 at 64.

[21] *Id*. ¶¶ 350-351 at 67.

14.     The Receivership Defendants advertised substantial returns and tax benefits in exchange for only a down payment on the solar lenses:[22]



15.     The lens purchase program that Defendant solicited others to purchase was not registered as a security with the United States Securities and Exchange Commission or the Utah Division of Securities.[23]

---

[22] Plaintiff's Trial Exhibits 496, 497, and 777 in Civil Enforcement Case, docket no. 38-3, filed Feb. 24, 2022.

[23] Receiver's Declaration in Support of Motion for Summary Judgment ("Receiver's Declaration") ¶¶ 4-5 at 3-4, docket no. 38-4, filed Feb. 24, 2022. This fact is not disputed. Defendant's Response references another person, "Johnson," and cites to "Johnson Decl." which is not part of the record of this case. Defendant's Memorandum in Opposition to Motion for Summary Judgment ("Response") at 5, docket no. 45, filed Apr. 22, 2022. Additionally, Defendant denies acting as a salesperson, but admits that he received commission payments relating to the sale of the solar lenses. Declaration of Matthew Shepard in Support of Defendant's Memorandum in Opposition to Motion for Summary Judgment ("Shepard's Declaration") ¶¶ 2 at 1-2, 9 at 3, docket no. 45-1, filed Apr. 22, 2022. Defendant asserts that the commission payments were assigned to him from his father's sales, and that he earned his own commissions starting in approximately May 2010. Id. Defendant also admits that the work he provided to the Receivership Entities involved marketing efforts for promoting the sale of the solar lenses. Id. ¶ 2 at 1-2, ¶ 11 at 3, ¶ 13 at 4, ¶ 18 at 4, ¶¶ 20-22 at 5.

**The Civil Enforcement Case against the Receivership Defendants**

16.     On November 23, 2015, the United States filed the Civil Enforcement Case against the Receivership Defendants alleging that they were operating a fraudulent solar energy scheme.[24]

17.     In the Civil Enforcement Case, the court found: "For more than ten years, the Receivership Defendants promoted an abusive tax scheme centered on purported solar energy technology featuring 'solar lenses' to customers across the United States. But the solar lenses were only the cover story for what the Receivership Defendants were really selling: unlawful tax deductions and credits."[25]

18.     The Receivership Defendants sold solar lenses emphasizing their purported tax benefits. Customers were told that they could "zero out" their federal income tax liability by buying enough solar lenses and claiming both a depreciation deduction and solar energy tax credit for the lenses.[26]

19.     The purported solar energy technology and solar lenses, however, did not work and could not generate marketable energy. Specifically, the court found that the "purported solar energy technology is not now, has never been, and never will be a commercial-grade solar energy system that converts sunlight into electrical power or other useful energy" and "[t]he solar lenses do not, either on their own or in conjunction with other components, use solar energy to generate [marketable electricity]."[27]

---

[24] Complaint for Permanent Injunction and Other Equitable Relief, ECF no. 2 in Civil Enforcement Case, filed Nov. 23, 2015.

[25] Memorandum Decision and Order on Receiver's Motion to Include Affiliates and Subsidiaries in Receivership ("Affiliates Order") ¶ 1 at 4, ECF no. 636 in Civil Enforcement Case, filed May 3, 2019; docket no. 38-5, filed Feb. 24, 2022.

[26] FFCL ¶ 203 at 35.

[27] *Id*. ¶¶ 261-264 at 49. This fact is not disputed. Defendant asserts that he has seen components of the technology work. Shepard's Declaration ¶ 4 at 2; Deposition Transcript of Matthew Shepard Sept. 1, 2021 ("Shepard

20.     None of these solar lenses ever met the necessary elements to qualify for depreciation deductions or the solar energy tax credit. Indeed, "[h]undreds, if not thousands" of customer lenses were not even removed from the shipping pallets.[28]

21.     Notwithstanding the fact the solar lenses and technology never worked, the Receivership Defendants continued to sell solar lenses to customers emphasizing that customers would qualify for depreciation deductions and/or the solar energy tax credit. Between 45,205 and 49,415 solar lenses were sold to customers.[29]

22.     The evidence adduced at the Civil Enforcement Case's trial showed that the Receivership Defendants organized the solar energy scheme; made false or fraudulent statements about the tax benefits to be obtained from purchasing a solar lens; and that the Receivership Defendants knew or had reason to know that their statements were false or fraudulent pertaining to a material matter, namely the tax benefits of depreciation and solar energy tax credits.[30]

23.     The Receivership Defendants' own transaction documents and testimony at trial in the Civil Enforcement Case showed that the gross receipts received by the Receivership Defendants were at least $32,796,196 and possibly much more.[31]

24.     Based on these facts and others, the court enjoined the Receivership Defendants in the Civil Enforcement Case from promoting their abusive solar energy scheme; ordered them

---

Deposition") at 29:6-31:2, docket no. 38-7, filed Feb. 24, 2022. But whether certain components of the technology worked does not genuinely dispute that the technology and solar lenses did not work and could not generate marketable energy. Defendant concedes that he is not an engineer. *Infra*, Undisputed Material Facts ¶ 52 at 13. And Defendant does not purport to be an expert regarding the technology. Defendant's asserted subjective belief that the technology and lenses could work as designed "despite the [technology's] problems, because the problems could be worked out," Shepard's Declaration ¶¶ 4-5 at 2, is not supported by evidence.

[28] FFCL ¶ 288 at 55, ¶¶ 407-413 at 81-83.

[29] *Id*. ¶ 79 at 14, ¶¶ 261-264 at 49.

[30] Memorandum Decision and Order Freezing Assets and to Appoint a Receiver ("Freeze Order") at 15-16, ECF no. 444 in Civil Enforcement Case, filed Aug. 22, 2018, docket no. 38-6, filed Feb. 24, 2022.

[31] FFCL ¶¶ 80-86 at 15.

to disgorge their gross receipts; and required them to turn over their assets and business operations to the Receiver.[32]

25.     The court found that the "whole purpose of RaPower, IAS, and LBT1 . . . was to perpetuate a fraud to enable funding for Neldon Johnson. The same is true for other entities Johnson created, controls, and owns . . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[33]

26.     "[T]he whole purpose of RaPower[] was to perpetrate a fraud to enable funding of the unsubstantiated, irrational dream of Nel[d]on Johnson. The same is true for the other entities Johnson established and used including IAS, SOLCO I, XSun Energy, Cobblestone, and the LTB entities."[34]

27.     "[The Receivership] Defendants have no legitimate business, [the Receivership] Defendants' solar energy scheme is an abusive tax scheme and not a legitimate business."[35]

28.     "[The Receivership] Defendants do not have any revenue or income aside from the sale of solar lenses."[36]

---

[32] Affiliates Order ¶ at 4; Freeze Order.

[33] Affiliates Order ¶ 2 at 4-5; FFCL at 128; Receiver's Report and Recommendation on Inclusion of Affiliates and Subsidiaries in Receivership Estate ("Receiver's Report and Recommendation") §§ B.4-5, B.7, B.10-13, F.4-5, F.7, F.10-13, ECF 581 in Civil Enforcement Case, filed Feb. 25, 2019. "Receivership Property" means "all property interests of each of the Receivership Defendants . . . . These property interests include, but are not limited to: monies, accounts, trusts, funds, digital currencies, securities, credits, stocks, bonds, effects, goods, chattels, intangible property (including patents and other intellectual property), real property, lands, premises, leases, claims, rights, ownership interests in domestic or foreign entities, and other assets, together with rents, profits, dividends, receivables, interest, or other income attributable thereto, of whatever kind, that the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly." Corrected Receivership Order ¶ 13.a at 7, ECF no. 491 in Civil Enforcement Case, filed Nov. 1, 2018.

[34] FFCL at 128 (footnote omitted).

[35] Freeze Order at 18.

[36] *Id*. at 19.

**Defendant's involvement with the Receivership Defendants and Receivership Entities**

29.     In around 2010, Defendant learned of the IAS turbine's potential of distilling brackish or dirty water while simultaneously producing energy.[37]

30.     In about October 2013, Defendant began working with his father, R. Gregory Shepard, doing consulting work for RaPower through Shepard Global, a Utah corporation owned by R. Gregory Shepard.[38]

31.     Shepard Global was Defendant's full-time work from approximately October 2013 until approximately June 2018.[39]

32.     Defendant was engaged by Shepard Global as an independent consultant. Defendant had a 1% ownership interest in Shepard Global.[40]

33.     Shepard Global was a separate legal entity from RaPower and IAS.[41]

---

[37] Shepard's Declaration ¶ 7 at 2. Defendant's asserted subjective beliefs regarding the viability of the technology and its benefits are not undisputed material facts. Defendant concedes that he is not an engineer. *Infra*, Undisputed Material Facts ¶ 52 at 13. And Defendant does not purport to be an expert regarding the technology. Additionally, good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." *Wing v. Layton*, 957 F. Supp. 2d. 1307, 1319 (D. Utah 2013) (quoting *Jobin v. McKay*, 84 F.3d 1330, 1338 (10th Cir. 1996)). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." *Id*. (quoting *Jobin*, 84 F.3d at 1338).

[38] Shepard's Declaration ¶ 17 at 4; Shepard Deposition at 16:17-19.

[39] Shepard's Declaration ¶ 28 at 6. Defendant's asserted subjective beliefs regarding the work he provided to Shepard Global and its value are not undisputed material facts. Good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." *Layton*, 957 F. Supp. 2d. at 1319 (quoting *Jobin*, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." *Id*. (quoting *Jobin*, 84 F.3d at 1338). Additionally, Defendant's efforts in performing work are not the relevant inquiry for determining whether reasonably equivalent value was given for a transfer. Rather, "the focus is on whether the debtor received reasonably equivalent value from the transfer." *Miller v. Wulf*, 84 F. Supp. 3d 1266, 1276 (D. Utah 2015). And reasonably equivalent value is not given where a transferee "essentially received money for prolonging the fraud of and on the [business entity]." *Wing v. Holder*, No. 2:09-cv-00118-DB, 2010 WL 5021087, *2 (D. Utah Dec. 3, 2010).

[40] Shepard Deposition at 18:4-11.

[41] Shepard's Declaration ¶ 19 at 4.

34.     Shepard Global provided marketing services to RaPower by marketing and promoting the sale of solar lenses.[42]

35.     Defendant was engaged by Shepard Global to assist in these marketing efforts. Defendant managed the website www.RaPower-3.com; designed and edited a regular newsletter for lens owners describing RaPower developments; assisted in tours of the Delta location where a few solar towers had been constructed; created brochures and pamphlets; made packets for conventions; and customer service, including answering phone calls and questions.[43]

36.     Defendant has an MBA in marketing.[44]

37.     The work Defendant did for Shepard Global was consistent with his experience and education at that time.[45]

---

[42] Shepard Deposition at 17:5-21.

[43] Id. at 20:8-22; Shepard's Declaration ¶ 18 at 4.

[44] Shepard's Declaration ¶ 6 at 2. Defendant's asserted subjective beliefs regarding the viability of the technology and its benefits are not undisputed material facts. Defendant concedes that he is not an engineer. Infra, Undisputed Material Facts ¶ 52 at 13. And Defendant does not purport to be an expert regarding the technology. Additionally, good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." Layton, 957 F. Supp. 2d. at 1319 (quoting Jobin, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." Id. (quoting Jobin, 84 F.3d at 1338).

[45] Shepard's Declaration ¶ 29 at 6. Defendant's asserted subjective beliefs regarding the work he provided to Shepard Global and its value are not undisputed material facts. Good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." Layton, 957 F. Supp. 2d. at 1319 (quoting Jobin, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." Id. (quoting Jobin, 84 F.3d at 1338). Additionally, Defendant's efforts in performing work are not the relevant inquiry for determining whether reasonably equivalent value was given for the transfer. Rather, "the focus is on whether the debtor received reasonably equivalent value from the transfer." Miller, 84 F. Supp. 3d 1266, 1276 (D. Utah 2015). And reasonably equivalent value is not given where a transferee "essentially received money for prolonging the fraud of and on the [business entity]." Holder, 2010 WL 5021087, *2.

38.     Shepard Global operated the website www.RaPower-3.com. Greg Shepard created the content for the website. Defendant helped to edit content and provide technical support for the website.[46]

39.     There was a link from www.RaPower-3.com to www.RaPower-3.net. No one could buy solar lenses at www.RaPower-3.com.[47]

40.     Johnson and IAS owned and operated the website www.RaPower-3.net, which handled the purchase of solar lenses. Defendant had no affiliation or access to www.RaPower-3.net.[48]

41.     Defendant received commissions from the IAS, RaPower, and Shepard Global for the sale of solar lenses from 2008 to 2018 in the amount of $32,608.22.[49]

42.     Defendant was not licensed under state or federal securities law to sell securities.[50]

43.     Defendant was paid $98,955.00 for the consulting services he provided to Shepard Global and RaPower. The payments he received from Shepard Global indicated they were commission payments.[51]

---

[46] Shepard's Declaration ¶ 20 at 5; Shepard Deposition at 20:18-21:5.

[47] Shepard's Declaration ¶ 22 at 5; Shepard Deposition at 23:2-9.

[48] Shepard's Declaration ¶¶ 21-22 at 5; Shepard Deposition at 23:2-9.

[49] Shepard Deposition at 77:12-15; Summary of Payments to Matthew Shepard, docket no. 38-8, filed Feb. 24, 2022; Shepard's Declaration ¶ 16 at 4.

[50] Shepard Deposition at 9:14-15.

[51] Shepard Deposition at 77:16-24. Defendant asserts that while the checks he received from Shepard Global indicate they were commission payments, the payments were for the marketing services he provided. Shepard's Declaration ¶ 13 at 4, ¶ 26 at 5. To support his assertions, Defendant cites to his deposition testimony. *Id*. (citing Shepard Deposition at 20). However, the cited deposition testimony states only Defendant's responsibilities as an independent consultant for Shepard Global. Shepard Deposition at 20:1-25. The testimony does not mention the payments Shepard Global made to Defendant. Nor does it state the purpose for which those payments were made. Therefore, Defendant's assertions are self-serving and are not supported by evidence. But even if the assertions are accepted as true, they do not materially affect the disposition of the Receiver's Motion for Partial Summary Judgment. *Infra*, Discussion at 27-29.

44.     On August 24, 2018, Shepard Global wrote a check to Defendant in the amount of $10,200.00. The check indicated it was a "Loan for Matt's Business."[52]

45.     The check was issued to Defendant two days after the court in the Civil Enforcement Case entered a freeze order, freezing the assets of Shepard Global.[53]

46.     Defendant has not repaid any amount of the purported $10,200.00 loan from Shepard Global.[54]

47.     Defendant regularly visited the RaPower site in Delta, Utah.[55]

48.     From about 2010 through 2018, Defendant visited the IAS manufacturing plant and solar site around 40 times and attended about 20 site tours. Defendant talked with employees, engineers, witnessed the manufacturing process, saw the various stages of research and development, and listened to Johnson talk about progress.[56]

---

[52] Aug. 24, 2018 Check from Shepard Global to Matthew Shepard ("Loan Check"), docket no. 38-9, filed Feb. 24, 2022.

[53] Freeze Order at 26.

[54] Shepard Deposition at 71:3-8. Defendant attempts to dispute this fact by asserting the loan was repaid through services he provided to Shepard Global. Response at 12 (citing Shepard's Declaration ¶ 15 at 4). However, Defendant does not identify specific services he provided as repayment for the loan. And Defendant's assertion is directly contradicted by his deposition testimony: "No [I have not repaid any of the loan]. I ended up having an emotional -- mental breakdown and ended up getting into legal trouble and have not been able to even come close to paying [the loan] back as I have not been able to have sufficient income to do so." Shepard Deposition at 71:3-8. Defendant's vague, self-serving, and unsupported assertion which is contradicted by his own testimony is not sufficient to create a genuine dispute regarding this fact.

[55] Shepard's Declaration ¶ 23 at 5.

[56] Id. ¶ 8 at 2. Defendant's asserted subjective beliefs regarding the viability of the technology are not undisputed material facts. Defendant concedes that he is not an engineer. Infra, Undisputed Material Facts ¶ 52 at 13. And Defendant does not purport to be an expert regarding the technology. Additionally, good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." Layton, 957 F. Supp. 2d. at 1319 (quoting Jobin, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." Id. (quoting Jobin, 84 F.3d at 1338).

49.     Defendant saw pallets of the inexpensively-mass produced solar lenses at the IAS manufacturing facility.[57]

50.     Defendant saw different components of the technology working, such as the turbine being run off of natural gas; the tower tracking the sun; and the solar lenses creating heat.[58]

51.     Defendant never saw a fully operating solar tower.[59]

52.     Defendant is not sure whether IAS could have run the turbine exclusively off the solar lenses. Defendant is not an engineer.[60]

53.     Defendant was aware IAS was not filing required reports with the SEC.[61]

---

[57] Shepard's Declaration ¶ 6 at 2. Defendant's asserted subjective beliefs regarding the viability of the technology and its benefits are not undisputed material facts. Defendant concedes that he is not an engineer. *Infra*, Undisputed Material Facts ¶ 52 at 13. And Defendant does not purport to be an expert regarding the technology. Additionally, good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." *Layton*, 957 F. Supp. 2d. at 1319 (quoting *Jobin*, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." *Id.* (quoting *Jobin*, 84 F.3d at 1338).

[58] Shepard's Declaration ¶ 24 at 5; Shepard Deposition at 29:2-16. Defendant's asserted subjective beliefs regarding the viability of the technology are not undisputed material facts. Defendant concedes that he is not an expert regarding the technology. *Infra*, Undisputed Material Facts ¶ 52 at 13. Additionally, good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." *Layton*, 957 F. Supp. 2d. at 1319 (quoting *Jobin*, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." *Id.* (quoting *Jobin*, 84 F.3d at 1338).

[59] Shepard Deposition at 28:21-24, 29:6-30:22.

[60] Shepard's Declaration ¶ 25 at 5; Shepard Deposition at 50:23-24, 51:8-9. Defendant's asserted subjective beliefs regarding the viability of the technology are not undisputed material facts. Defendant does not purport to be an expert regarding the technology. Additionally, good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose." *Layton*, 957 F. Supp. 2d. at 1319 (quoting *Jobin*, 84 F.3d at 1338). "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith." *Id.* (quoting *Jobin*, 84 F.3d at 1338).

[61] Shepard Deposition at 47:18-49:6.

54.     Defendant was aware of the IRS's 2012 criminal raid on the Receivership Defendants' operations in Delta, Utah because he was present when the raid occurred.[62]

### Financial condition of certain Receivership Entities

**IAS**

55.     IAS was a public company and filed annual reports that included audited financial statements. The most recent annual report filed by IAS was for 2016. In that report, IAS indicated that it had $0.00 of revenue for the most recent fiscal year.[63]

56.     IAS indicated that as of the date of its annual report for 2016, it had "not marketed any commercially acceptable products" and "will continue to need additional operating capital either from borrowing or from the sale of additional equities."[64]

57.     IAS also indicated that "[s]ince inception, we have incurred operating losses each year of our operations and we expect to continue to incur operating losses for the next several years. We may never become profitable."[65]

58.     As of June 30, 2016, IAS indicated that it had accumulated deficits of $40,156,398 with only $3,997,445 in total assets.[66]

59.     IAS's annual report for 2016 also states that "[t]he accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 1 to the financial statements, the Company has suffered recurring losses from operations that raises a substantial doubt about its ability to continue as a going concern."[67]

---

[62] *Id*. at 52:17-53:16.

[63] IAS Annual Report for Fiscal Year Ended June 30, 2016 at 2, docket no. 38-10, filed Feb. 24, 2022.

[64] *Id*. at 12.

[65] *Id*. at 15.

[66] *Id*. at 21-22.

[67] *Id*. at 37.

**RaPower**

60.     RaPower's revenue came from the sale of solar lenses.[68]

61.     Johnson's technology never generated marketable electricity or revenue from the sale of power.[69]

62.     The obligation of investors to make payments from the purchase of the solar lenses (beyond the initial down payment) was conditioned on receiving income from the use of the lenses in producing solar power.[70]

63.     RaPower was liable to lens purchasers to refund the purchase price for lenses if customers wanted their money back.[71]

64.     Under generally accepted accounting principles in the United States ("GAAP"), revenue is not recognized until the entity "satisfies a performance obligation by transferring a promised good or service (that is, an asset) to a customer."[72]

65.     GAAP would not permit any revenue to be recognized by RaPower until the solar generating systems were in place and operating because the solar lenses were never transferred to the customers' possession and there was no intent to do so based on the operations and maintenance agreements entered into by the customers of RaPower indication that LTB1 would operate and maintain the customers' lenses to produce revenue.[73]

---

[68] FFCL at 87, ¶ 50 at 9, ¶ 79 at 14.

[69] *Id*. ¶¶ 292-315 at 57-60.

[70] *Id*. at 99, 101, 115-116, ¶ 20 at 5, ¶¶ 143-171 at 26-29, ¶¶ 329-334 at 63; Declaration of Steven R. Checketts in Support of Receiver's Motion for Summary Judgment ("Checketts's Declaration") ¶ 4 at 2, docket no. 38-11, filed Feb. 24, 2022.

[71] FFCL at 102, 114-116, ¶ 135 at 24, ¶ 171 at 29, ¶¶ 330-334 at 63, ¶ 360 at 69-70.

[72] Checketts's Declaration ¶ 5 at 2.

[73] *Id*. ¶ 6 at 2; *Supra* Undisputed Material Facts ¶¶ 4-8 at 3, ¶¶ 11-13 at 4. Defendant's bald denial does not create a genuine dispute of this fact. Response at 15. Defendant does not challenge the opinion of the Receiver's expert and Defendant presents no evidence to dispute the expert's opinion.

66.     Under GAAP, RaPower should have recorded the entire amount of customers'
cash deposits as customer deposit liabilities, with no additional amounts recognized as either
revenue or account receivable until RaPower fulfilled its performance obligations by using the
lenses to generate revenues from electricity production.[74]

67.     Beginning in at least May 1, 2009, the combined debts of RaPower, IAS,
Cobblestone, Solco, XSun, LBT1, LBT O&M, LLC, DCL16BLT, Inc., NPJFLP, Solstice, Black
Night, and Starlite were greater than the sum of their combined assets.[75]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."[76] A factual dispute is genuine when
"there is sufficient evidence on each side so that a rational trier of fact could resolve the issue
either way"[77] or "if a reasonable jury could return a verdict for the nonmoving party."[78] A fact is
material if "it is essential to the proper disposition of [a] claim."[79] And in ruling on a motion for
summary judgment, the factual record and all reasonable inferences drawn therefrom are viewed
in a light most favorably to the nonmoving party.[80]

---

[74] *Id.* ¶ 7 at 2. Defendant's bald denial does not create a genuine dispute of this fact. Response at 15. Defendant does not challenge the opinion of the Receiver's expert and Defendant presents no evidence to dispute the expert's opinion.

[75] Declaration of Richard Hoffman in Support of Receiver's Motion for Summary Judgment ("Hoffman's Declaration") ¶¶ 3-5 at 1-2, docket no. 38-12, filed Feb. 24, 2022.

[76] FED. R. CIV. P. 56(a).

[77] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[78] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotations omitted).

[79] *Adler*, 144 F.3d at 670.

[80] *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[81] If the moving party carries this initial burden, the nonmoving party "may not rest upon mere allegations or denials of [the] pleading[s], but must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which it carries the burden of proof."[82] "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to defeat a properly supported motion for summary judgment."[83]

The Receiver seeks summary judgment on his avoidance of fraudulent transfers claims under Utah's Uniform Voidable Transactions Act ("UVTA").[84] The Receiver argues that the IAS, RaPower, and Shepard Global's $141,763.22 in transfers to Defendant are voidable because they were made with actual intent to hinder, delay, or defraud creditors.[85] The Receiver also argues that certain transfers from IAS and RaPower are voidable because they were made at a time when IAS and RaPower were insolvent and IAS and RaPower did not receive reasonably equivalent value in exchange for the transfers.[86]

Defendant argues that summary judgment must be denied because the Receiver lacks standing to seek disgorgement of the commission payments Defendant received,[87] and because the $10,200.00 loan he received from Shepard Global was not pleaded of the Receiver's

---

[81] *Id*. at 670-71.

[82] *Universal Money Ctrs., Inc.*, 22 F.3d at 1529 (internal quotations and citations omitted; emphasis in original).

[83] *Id.* (internal quotations omitted).

[84] Receiver's Motion for Partial Summary Judgment.

[85] *Id*. at 17-27.

[86] *Id*. at 27-29.

[87] Response at 27-29.

Complaint.[88] Defendant also argues that genuine issues of material fact exist regarding Shepard

Global's insolvency;[89] whether the IAS, RaPower, and Shepard Global made the transfers to

Defendant with actual intent to defraud;[90] and whether Defendant took the transfers in good faith

and provided IAS, RaPower, and Shepard Global reasonably equivalent value.[91]

## DISCUSSION

### The factual record of the Civil Enforcement Case
### is incorporated in this ancillary proceeding

As an initial matter, Defendant challenges the Receiver's use of findings from the Civil

Enforcement Case, arguing that these findings are not material and cannot be used in this case

because Defendant was not party to the Civil Enforcement Case.[92] Defendant is correct that the

findings from the Civil Enforcement Case are not binding on him in this case. But the record in

the Civil Enforcement Case is incorporated into this case.

This case—along with other actions brought by the Receiver— is ancillary to, and arose

directly from, the Civil Enforcement Case.[93] The orders in the Civil Enforcement Case and their

findings (along with the evidence cited to support them) provide the basis for the existence of the

receivership. This includes findings that the Receivership Defendants promoted and operated an

abusive tax scheme centered on purported solar energy technology; that the solar energy

technology did not work; and that the Receivership Defendants' solar scheme was not a

---

[88] *Id*. at 27.

[89] *Id*. at 21.

[90] *Id*. at 21-23.

[91] *Id*. at 23-26.

[92] Response at 4-9. 13-16. Defendant does not make any evidentiary objection to the incorporation of the record in the Civil Enforcement Case, but rather only argues that certain Undisputed Material Facts relating to the Civil Enforcement Case are not material, and that claim preclusion is not appropriate in this case. *Id*.

[93] General Order No. 19-003, Oct. 18, 2019 (D. Utah).

legitimate business. These findings were made against the Receivership Defendants after a

12-day bench trial and affirmed by the Tenth Circuit Court of Appeals.[94]

   In the receivership context, courts often incorporate the factual record of an underlying

case into ancillary actions.[95] The ability of district courts to use such materials is an important

tool in receiverships because use of the existing record reduces the time necessary to settle

disputes, decreases litigation costs, avoids duplication of work, and avoids inconsistent

decisions.[96] The use of the record and undisputed conclusions from the underlying action avoids

the expense, distraction, and complexity of relitigating undisputed—and appeal-affirmed—

findings. District courts have broad discretion in their supervisory role over equity receiverships

involving numerous parties and complex transactions.[97] It seems doubtful, at best, that equitable

receiverships would function if it were necessary to relitigate the factual basis for the

receivership every time an ancillary action was litigated. And incorporation of the underlying

action's factual record is particularly appropriate when, as here, the defendant does not produce

any evidence to challenge the factual record and findings of the underlying action.

   Judicial notice of the record in the Civil Enforcement Case under Federal Rule of

Evidence 201 is also appropriate. In the summary judgment context, district courts may "take

judicial notice, whether requested or not, of its own records and files, and facts which are part of

---

[94] FFCL at 1; *United States v. RaPower-3, LLC*, 960 F.3d 1240, 1243 (10th Cir. 2020).

[95] *Hafen v. Evans*, No. 2:19-CV-00895-TC, 2021 WL 3501658, at *1 (D. Utah Aug. 9, 2021).

[96] *Elliott*, 953 F.2d at 1566 (citing *SEC v. Wencke*, 783 F.2d 829, 837 (9th Cir. 1986)). These reasons are also why all actions arising from the Civil Enforcement Case were ordered to be heard by the District Judge that presided over the Civil Enforcement Case. General Order, No. 19-003.

[97] *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (district courts have "broad powers and wide discretion to determine relief in an equity receivership."); *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005); *Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 4530459, *7 (D. Ariz. Aug. 6, 2020) (discussing the need to avoid distracting satellite litigation in a receivership).

its public records."[98] "Judicial notice is particularly applicable to the [district] court's own records of prior litigation closely related to the case before it."[99] Therefore, the record in the Civil Enforcement Case is construed as part of the record in this case.

To be clear, the findings in the Civil Enforcement Case are not *binding* on Defendant. But because Defendant presents no evidence to challenge the Undisputed Material Facts or the record evidence from the Civil Enforcement Case which are incorporated here, there is no need to "grind the same corn a second time."[100] The findings in the Civil Enforcement Case that Defendant has failed to dispute with evidence are made again in this case for purposes of this Memorandum Decision and Order, as reflected in the Undisputed Material Facts.[101]

### The Receiver has standing to seek avoidance of the transfers the Receivership Entities made to Defendant

Defendant argues that the Receiver lacks standing to seek disgorgement of the commission payments he received.[102] This argument lacks merit.

The Receiver's claims for avoidance of the alleged fraudulent transfers IAS, RaPower, and Shepard Global made to Defendant require the existence of a creditor and a debtor.[103] Under the UVTA, a "creditor" is "a person that has a claim,"[104] and a "debtor" is "a person that is liable

---

[98] *St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("a district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial."); *Anderson v. Cramlet*, 789 F.2d 840, 845 (10th Cir. 1986); *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *United States v. Ahidley*, 486 F.3d 1184, 1192 (10th Cir. 2007).

[99] *St. Louis Baptist Temple*, 605 F.2d at 1172.

[100] *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) (quoting *Aloe Creme Laboratories v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970)).

[101] *Supra*, Undisputed Material Facts at 3-16.

[102] Response at 27-29.

[103] Utah Code Ann. §§ 25-6-202(1), -203(1) (formerly numbered as Utah Code Ann. §§ 25-6-5(1), -6(1) (2016)); *Bradford v. Bradford*, 993 P.2d 887, 891 (Utah Ct. App. 1999).

[104] Utah Code Ann. § 25-6-102(4) (formerly numbered as Utah Code Ann. § 25-6-2(4) (2016)).

on a claim."[105] And a "claim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[106]

The Receivership Entities that made the alleged fraudulent transfers to Defendant (IAS, RaPower, and Shepard Global) are the debtors in this case. The receivership estates of IAS, RaPower, and Shepard Global are the creditors. This is because a receiver may "sue to redress injuries to the entit[ies] in receivership."[107] And receivership entities that were abused by and operated as a fraudulent scheme qualify as defrauded creditors.[108] "[W]rongdoer[s] must not be allowed to profit from [their] wrong by recovering property that [they] had parted with in order to thwart [their] creditors [or in furtherance of their fraudulent schemes]."[109] But "[t]he appointment of the receiver remove[s] the wrongdoer from the scene."[110]

Once the wrongdoer "has been ousted from control of and beneficial interest in the [receivership entities] . . . [t]he [entities are] no more [the wrongdoer]'s evil zombies."[111] "Freed from [the wrongdoer's] spell [the receivership entities] bec[o]me entitled to the return of the moneys . . . that [the wrongdoer] had made the [entities] divert to unauthorized purposes."[112] Therefore, when the entities "created and initially controlled by [the wrongdoer] are controlled by a receiver whose only object is to maximize the value of the [entities] for the benefit of their

---

[105] *Id*. § 25-6-102(6) (formerly numbered as Utah Code Ann. § 25-6-2(6) (2016)).

[106] *Id*. § 25-6-102(3) (formerly numbered as Utah Code. Ann. § 25-6-2(3) (2016)).

[107] *Cornelius*, 786 F.3d at 1316 (quoting *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)).

[108] *Id*. at 1316-1317; *Scholes*, 56 F.3d at 754.

[109] *Scholes*, 56 F.3d at 754.

[110] *Id*.

[111] *Id*.

[112] *Id*.

investors and any creditors, [there is no] objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [the wrongdoer]."[113]

This analysis derives from case law involving receiverships over entities that acted in Ponzi schemes. But this does not affect the analysis's application to this case. A finding of a Ponzi scheme was not required for the appointment of the Receiver for the Receivership Entities. There has also been no adjudication regarding the existence or the absence of a Ponzi scheme relating to the fraudulent scheme involving the Receivership Entities—neither party has presented the issue for determination.

More fundamentally though, the case law from which the analysis derives does not hold that the analysis is applicable only to situations involving Ponzi schemes. The rationale behind the analysis is equally applicable to the fraudulent scheme involving the Receivership Entities. The Receivership Entities (including IAS, RaPower, and Shepard Global) were "evil zombie[s]" under the "spell" of those who controlled and operated them as a fraudulent scheme, thus causing injury to the Receivership Entities.[114]

The appointment of the Receiver removed the fraudulent actors from the control of and beneficial interest in IAS, RaPower, and Shepard Global. This "cleansed" IAS, RaPower, and Shepard Global, making their receivership estates "separate entities in the eyes of the law."[115] Therefore, the Receiver may now take actions to maximize the value of the IAS, RaPower, and Shepard Global's receivership estates by bringing suit to recover assets that were fraudulently dissipated.[116] Defendant cites no binding precedent or sufficiently persuasive legal authority that

---

[113] *Id*. at 755.

[114] *Scholes*, 56 F.3d at 754; *Cornelius*, 786 F.3d at 1316.

[115] *Perlman v. Am. Express Centurion Bank*, No. 19-61386-CIV-SMITH, 2020 WL 10181895, *4 (S.D. Fl. July 17, 2020).

[116] *Id*.

a Ponzi scheme is a prerequisite for the Receiver to have standing or the ability to pursue his claims in this case.

The Receiver is the court-appointed receiver of the Receivership Entities, entities that were operated as and abused by a fraudulent scheme. The Receiver stands in the shoes of the defrauded Receivership Entities.[117] The creditors for the Receiver's fraudulent transfer claims are the receivership estates of IAS, RaPower, and Shepard Global. The debtors for the Receiver's fraudulent transfer claims are IAS, RaPower, and Shepard Global. And the Receiver has standing to assert claims to avoid the fraudulent transfers IAS, RaPower, and Shepard Global made, including those allegedly made to Defendant.[118]

### The Receiver's Complaint sufficiently pleads the $10,200.00 loan Defendant received from Shepard Global as an alleged fraudulent transfer

Defendant argues that the $10,200.00 purported loan he received from Shepard Global was not pleaded of the Receiver's Complaint.[119] This argument lacks merit.

The Receiver's Complaint expressly alleges that Defendant received more than $141,763.22 in alleged fraudulent transfers from IAS, RaPower, and Shepard Global.[120] Specifically, the Complaint alleges Defendant received $12,200.00 from IAS; $20,408.22 from RaPower; and $109,155.00 from Shepard Global.[121] The Complaint also attaches a spreadsheet summarizing these transfers, as well as a copy of the $10,200.00 check Defendant received from

---

[117] *Cornelius*, 786 F.3d at 1316.

[118] *Perlman*, 2020 WL 10181895, *4.

[119] Response at 27.

[120] Complaint ¶ 1 at 2.

[121] *Id*. ¶ 26 at 7.

Shepard Global purporting to be "For Loan For Matt's Business."[122] And the Complaint seeks recovery of the entire $141,763.22 in transfers to Defendant.[123]

The Receiver's Complaint sufficiently pleads Shepard Global's $10,200.00 purported loan to Defendant as an alleged fraudulent transfer for which the Receiver seeks recovery. And the Complaint's allegations provided sufficient notice to Defendant that the $10,200.00 loan is subject to the Receiver's claims. Therefore, the Receiver does not inappropriately seek summary judgment that the $10,200.00 loan is an avoidable fraudulent transfer.

### IAS, RaPower, and Shepard Global's insolvency are relevant, but proving insolvency is not necessarily required

Defendant argues that summary judgment is inappropriate because genuine issues of material fact exist regarding Shepard Global's insolvency.[124] Defendant is correct that genuine issues of fact exist regarding Shepard Global's insolvency. The Receiver's Motion for Partial Summary Judgment does not attempt to establish Shepard Global's insolvency. But these factual issues do not preclude summary judgment because proving Shepard Global's insolvency is not necessarily required.

The Receiver's Motion for Partial Summary Judgment seeks avoidance of the alleged fraudulent transfers that IAS, RaPower, and Shepard Global made to Defendant under Utah Code Ann. § 25-6-202(1)(a) and Utah Code Ann. § 25-6-5(1)(a) (2016).[125] Proving insolvency is not a necessary element of a fraudulent transfer claim under these Subsections. Rather, these

---

[122] *Id*. ¶ 26 at 7; Payments to Matthew Shepard, docket no. 2-2, filed July 26, 2019.

[123] Complaint ¶¶ A-F at 11-12.

[124] Response at 21. Defendant does not address the Receiver's argument or supporting evidence that IAS and RaPower were insolvent for all transfers made to Defendant after May 1, 2009. Receiver's Motion for Partial Summary Judgment at ¶¶ 42-54 at 13-15, 16, 27-29; *Supra*, Undisputed Material Facts ¶¶ 55-67 at 15-17.

[125] Receiver's Motion for Partial Summary Judgment at 17-27.

Subsections require that the Receiver prove there was "[a] transfer made or obligation incurred by a debtor . . . with actual intent to hinder, delay, or defraud any creditor of the debtor[.]"[126]

IAS, RaPower, and Shepard Global's insolvency are relevant to determining whether they had actual intent to defraud in making the transfers to Defendant.[127] But insolvency is only one of several indicia or "badges of fraud" that are considered in determining actual intent to defraud.[128] Therefore, the existence of factual issues regarding Shepard Global's insolvency does not necessarily prevent entry of judgment in favor of the Receiver on his claims under Utah Code Ann. § 25-6-202(1)(a) and Utah Code Ann. § 25-6-5(1)(a) (2016).

Nevertheless, Defendant does not address the Receiver's arguments regarding IAS and RaPower's insolvency, nor does he sufficiently challenge the Receiver's evidence of IAS and RaPower's insolvency.[129] "A debtor is insolvent if, at fair valuation, the sum of the debtor's debts is greater than all of the debtor's assets."[130] The Undisputed Material Facts, which are supported by unrefuted expert opinion, demonstrate that under a balance sheet analysis, IAS and RaPower were insolvent beginning in at least May 1, 2009.[131] Therefore, IAS and RaPower's insolvency are indicia that their transfers to Defendant after May 1, 2009, were made with actual intent to defraud.[132]

---

[126] Utah Code Ann. § 25-6-202(1)(a) (formerly Utah Code Ann. § 25-6-5(1)(a) (2016)).

[127] *Id*. § 25-6-202(2)(i) (formerly Utah Code Ann. § 25-6-5(2)(i) (2016)).

[128] *Id*. § 25-6-202(2)(a)-(k) (formerly Utah Code Ann. § 25-6-5(2)(a)-(k) (2016)); *City Nat'l Bank, N.A. v. Breslin*, 175 F. Supp. 3d 1314, 1319 (D. Utah 2016).

[129] Receiver's Motion for Partial Summary Judgment at ¶¶ 42-54 at 13-15, 16, 27-29.

[130] Utah Code Ann. § 25-6-103(1) (formerly Utah Code Ann. § 25-6-3(1) (2016)).

[131] *Supra*, Undisputed Material Facts ¶¶ 55-67 at 15-17.

[132] Utah Code Ann. § 25-6-202(2)(i) (formerly Utah Code Ann. § 25-6-5(2)(i) (2016)).

**IAS, RaPower, and Shepard Global made the transfers to Defendant
with actual intent to hinder, delay, or defraud creditors**

Under the UVTA, a transfer is voidable if the debtor (in this case, IAS, RaPower, and

Shepard Global) made the transfer with "actual intent to hinder, delay, or defraud any creditor of

the debtor."[133] To determine if a transfer is made with actual intent to hinder, delay, or defraud,

courts look at a variety of indicia or "badges of fraud" set forth in the UVTA.[134] Courts also

examine the knowledge of the transferors and the purpose of the transfer.[135]

In *In re Independent Clearing House Co.*, the district court examined transfers made by a

fraudulent business entity, operating as a Ponzi scheme.[136] The district court held that the debtor

knew the business was not legitimate and that "from the very nature of his activities," creditors

would lose money.[137] As a result of this knowledge, the only inference possible was that the

transfers were made with actual intent to hinder, delay, or defraud creditors.[138]

A similar finding is appropriate in this case based on the Undisputed Material Facts. With

exception of the $10,200.00 loan Shepard Global made to Defendant,[139] each transfer made to

him was payment for work that marketed and promoted the fraudulent solar lens technology and

solicited others to purchase the solar lenses.[140] The purchase of solar lenses was the primary

component of the Receivership Defendants' fraudulent tax scheme.[141] The "whole purpose of

---

[133] Utah Code Ann. § 25-6-202(1)(a) (formerly Utah Code Ann. § 25-6-5(1)(a) (2016)).

[134] *Id*. § 25-6-202(2)(a)-(k) (formerly Utah Code Ann. § 25-6-5(2)(a)-(k) (2016)); *Breslin*, 175 F. Supp. 3d at 1319.

[135] *In re Independent Clearing House Co.*, 77 B.R. 843 (D. Utah 1987).

[136] *Id.*

[137] *Id.* at 860.

[138] *Id.*

[139] *Supra*, Undisputed Material Facts ¶¶ 44-46 at 13.

[140] *Id*. ¶¶ 30-32 at 10, ¶¶ 34-35 at 11, ¶¶ 38-43 at 12.

[141] *Id*. ¶¶ 1-28 at 3-9.

[the Receivership Entities] was to perpetuate a fraud to enable funding for Neldon Johnson. . . . Johnson has commingled funds between these entities, used their accounts to pay personal expenses, and transferred Receivership Property to and through them in an attempt to avoid creditors."[142]

Shepard Global's insolvency and a Ponzi Scheme have not been found in this case. However, the Receivership Defendants and Receivership Entities (including IAS, RaPower, and Shepard Global) did not conduct a legitimate business.[143] The Undisputed Material Facts demonstrate that the marketing, promoting, and sale of solar lenses perpetuated and expanded the Receivership Defendants' fraudulent scheme.[144] Defendant was paid commissions by IAS, RaPower, and Shepard Global for the sale of solar lenses.[145] And all consulting and other work performed by Defendant for IAS, RaPower, and Shepard Global (which Defendant asserts the transfers were actually for)[146] was directly related to marketing and promoting the fraudulent solar lens technology.[147] Whether the transfers were commission payments for the sale of solar lenses or wages and consulting fees for marketing and promoting the solar lens technology, the transfers IAS, RaPower, and Shepard Global made to Defendant were for work that served only to perpetuate and expand the Receivership Defendant's fraudulent scheme.

Defendant argues that genuine issues of material fact exist regarding whether the IAS, RaPower, and Shepard Global made the transfers to Defendant with actual intent to defraud.[148]

---

[142] *Id*.¶¶ 25-26 at 9.

[143] *Id*. ¶ 27 at 10.

[144] *Id*. ¶¶ 1-28 at 3-9.

[145] *Id*. ¶ 40 at 12, ¶ 43 at 12.

[146] Shepard's Declaration ¶ 13 at 4, ¶ 26 at 5.

[147] *Supra*, Undisputed Material Facts ¶¶ 30-32 at 10, ¶¶ 34-35 at 11, ¶¶ 38-40 at 12, ¶ 43 at 12.

[148] Response at 21-23.

However, the only reasonable inference from the Undisputed Material Facts and record evidence is that the transfers to Defendant were made with actual intent to hinder, delay, and defraud creditors of the IAS, RaPower, and Shepard Global. "[T]he question of intent to defraud is not debatable" where IAS, RaPower, and Shepard Global were operated as a fraudulent scheme and the transfers made to Defendant were for work that perpetuated and expanded that fraudulent scheme.[149] The only reasonable inference from IAS, RaPower, and Shepard Global's transfers to Defendant is that the transfers were made with actual intent to hinder, delay, or defraud creditors.

Additionally, actual intent to defraud is inferred for each transfer to Defendant (including the $10,200.00 loan) based upon the indicia and badges of fraud set forth in the UVTA.[150] Several factors exist that compel a finding of actual intent to hinder, delay, or defraud regarding each transfers to Defendant in this case, including:

- Defendant was an insider as he was a part owner of Shepard Global and the son of R. Gregory Shepard;[151]

- The Receivership Defendants had been sued or threatened with suit before most of the transfers to Defendant as the Internal Revenue System began a criminal investigation of the Receivership Defendants in June 2012, and the Department of Justice commenced the Criminal Enforcement Action in November 2015;[152]

- The Receivership Defendants had no legitimate business, and had not received any revenue or income aside from the sale of solar lenses;[153]

- The Receivership Defendants have removed or concealed assets and records;[154]

---

[149] *In re Independent Clearing House*, 77 B.R. at 861 (quoting *Conroy v. Shott*, 363 F.2d 90, 91-91 (6th Cir. 1966)).

[150] *RES-NV CHLV, LLC v. Rosenberg*, No. 2:13-cv-00115-DK, 2015 WL 423284 (D. Utah Feb. 2, 2015).

[151] Utah Code Ann. § 25-6-102(8) (formerly Utah Code Ann. § 25-6-2(8) (2016)); Utah Code Ann. § 25-6-202(2)(a) (formerly Utah Code Ann. § 25-6-5(2)(a) (2016)); *Supra*, Undisputed Material Facts ¶ 30 at 10, ¶ 32 at 10.

[152] Utah Code Ann. § 25-6-202(2)(d) (formerly Utah Code Ann. § 25-6-5(2)(d) (2016)); *Supra*, Undisputed Material Facts ¶ 16 at 7, ¶ 54 at 15.

[153] *Supra*, Undisputed Material Facts ¶¶ 27-28 at 9.

[154] Utah Code Ann. § 25-6-202(2)(g) (formerly Utah Code Ann. § 25-6-5(2)(g) (2016)); Affiliates Order at 55; Memorandum Decision and Order Granting Turnover Motion; Denying Motion to Strike; Overruling Objection to Authentication of Exhibits; and Overruling Objection to Rejection of Reputed Contract ("Turnover Order") at 45-47,

- The Receivership Defendants falsified documents to cover up their fraud;[155]

- IAS, RaPower, and Shepard Global did not receive reasonably equivalent value in return for the transfers;[156]

- IAS and RaPower were insolvent beginning in at least May 1, 2009;[157]

- Shepard Global's $10,200 loan to Defendant has not been repaid; was made after the entry of judgment and the entry of an order freezing Shepard Global's assets in the Civil Enforcement Case; and was not disclosed to the court in the Civil Enforcement Case.[158]

"The existence of one or more of these badges in a case does not necessarily constitute fraud per se, nor is the presence of one or more of the elements conclusive."[159] However, summary judgment is appropriate where "the undisputed facts support an inference of fraudulent intent."[160]

Viewing the Undisputed Material Facts and reasonable inference drawn therefrom in a light most favorable to Defendant,[161] the Receiver has produced sufficient evidence of indicia and badges of fraud to support an inference that each transfer to Defendant was made with actual intent to hinder, delay, or defraud creditors. Defendant has failed to adequately dispute these indicia and badges of fraud, instead arguing only his own purported efforts to earn the payments

---

ECF no. 1007 in Civil Enforcement Case, filed Sept. 15, 2020, docket no. 38-14, filed Feb. 24, 2022; Civil Contempt Order Re: Neldon Johnson, Glenda Johnson, LaGrand Johnson, and Randale Johnson ("Civil Contempt Order") at 5-9, 11-19, ECF no. 947 in Civil Enforcement Case, filed July 6, 2020, docket no. 39-15, filed Feb. 24, 2022.

[155] Civil Contempt Order at 8-9; Turnover Order at 41-42.

[156] Utah Code Ann. § 25-6-202(2)(h) (formerly Utah Code Ann. § 25-6-5(2)(h) (2016)); *Infra*, Discussion at 33-36.

[157] Utah Code Ann. § 25-6-202(2)(i) (formerly Utah Code Ann. § 25-6-5(2)(i) (2016)); *Supra*, Undisputed Material Facts ¶¶ 55-67 at 15-17, Discussion at 26. Only IAS's first three transfers to Defendant (totaling $9,700) occurred prior to its insolvency on May 1, 2009. Summary of Payments to Matthew Shepard.

[158] Utah Code Ann. § 25-6-202(2)(c), (g), (j) (formerly Utah Code Ann. § 25-6-5(2)(c), (g), (j) (2016)); *Supra*, Undisputed Material Facts ¶¶ 44-46 at 13.

[159] *Bresline*, 175 F. Supp. 3d at 1319 (quoting *United States v. Barson*, No. 2:97-cv-551-SA, 1999 WL 674567, *5 (D. Utah July 16, 1999)).

[160] *Id*. (citing *Wasatch Oil & Gas, LLC v. Reott*, 163 P.3d 713, 722 (Utah Ct. App. 2007).

[161] *Adler*, 144 F.3d at 670.

he received in good faith.[162] Therefore, based on the Undisputed Material Facts and record evidence, each transfer that IAS, RaPower, and Shepard Global made to Defendant (totaling $141,763.22) was fraudulent as a matter of law.

Because IAS, RaPower, and Shepard Global made the transfers to Defendant with actual intent to hinder, delay, or defraud creditors, the transfers are avoidable by the Receiver unless Defendant establishes a good faith defense.[163] To establish the good faith defense, Defendant must show (1) he took the transfers in good faith, and (2) for reasonably equivalent value given to IAS, RaPower, and Shepard Global.[164] Defendant cannot make this showing.

### Genuine issues of fact exist regarding whether Defendant took the transfers in good faith, but this does not preclude summary judgment in favor of the Receiver

Defendant argues that genuine issues of material fact exist regarding whether he took the transfers in good faith.[165] Good faith is "measured objectively" based on whether "the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and [whether] diligent inquiry would have discovered the fraudulent purpose."[166] "A transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to a finding of good faith."[167]

The Undisputed Material Facts include facts that highly suggest Defendant should have known of, or at least inquired about, IAS and RaPower's insolvency; the Receivership Defendants' fraudulent scheme; and the fraudulent intent underlying IAS, RaPower, and Shepard

---

[162] Response at 21-26.

[163] Utah Code Ann. § 25-6-303(1)(a) (formerly Utah Code Ann. § 25-6-8(1)(a)).

[164] *Id*. § 25-6-304(1) (formerly Utah Code Ann. § 25-6-9(1) (2016)).

[165] Response at 23-26.

[166] *Layton*, 957 F. Supp. 2d. at 1319 (quoting *Jobin*, 84 F.3d at 1338).

[167] *Id*. (quoting *Jobin*, 84 F.3d at 1338).

Global's transfers to him.[168] But the Undisputed Material Facts also include facts capable of supporting reasonable inference that Defendant took the transfers in good faith.[169] And some of the Undisputed Material Fact are capable of supporting either the Receiver or Defendant's arguments regarding good faith.[170]

"At [the summary judgment] stage, a reviewing court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party, but it may grant summary judgment when the record taken as a whole couldn't lead a rational trier of fact to find for the non-moving party."[171] "A court's proper role thus involves determining whether a jury could reasonably find that the plaintiff proved his case by the quality and quantity of the evidence."[172]

On this record, genuine issues of fact exist regarding whether Defendant took the transfers from IAS, RaPower, and Shepard Global in good faith. But the existence of these factual issues does not preclude summary judgment in favor of the Receiver. This is because the good faith defense requires that Defendant also show that reasonably equivalent value was given to IAS, RaPower, and Shepard Global from the transfers.[173] And Defendant cannot make this showing.

---

[168] *Supra*, Undisputed Material Facts ¶¶ 15-16 at 6-7, ¶¶ 30-32 at 10, ¶¶ 41-45 at 12-13, ¶ 51 at 14, ¶¶ 53-54 at 14-15.

[169] *Id*. ¶ 29 at 10, ¶ 33 at 10, ¶¶ 39-40 at 12, ¶ 50 at 14.

[170] *Id*. ¶ 34-38 at 10-11, ¶¶ 47-49 at 13-14, ¶ 52 at 14.

[171] *Sidlo v. Millercoors, LLC*, 718 Fed. App'x 718, 726 (10th Cir. 2018).

[172] *Id*.

[173] Utah Code Ann. § 25-6-304(1) (formerly Utah Code Ann. § 25-6-9(1) (2016)).

### IAS, RaPower, and Shepard Global did not receive
### reasonably equivalent value from the transfers to Defendant

"[I]n determining whether reasonably equivalent value was given, the focus is on whether

the *debtor received* reasonably equivalent value from the transfer."[174] "In other words, the

question is not whether [the transferee] 'gave reasonably equivalent value; it is whether [the

debtor] received reasonably equivalent value.'"[175] Defendant does not attempt to identify what

benefit IAS, RaPower, or Shepard Global received in exchange for the transfers to him. Rather,

Defendant focuses only on what labor and services he performed in exchange for the transfers.[176]

This is immaterial. Because Defendant does not identify any value received by IAS, RaPower,

and Shepard Global, his good faith defense fails as a matter of law.

Additionally, Defendant could not have provided reasonably equivalent value in

exchange for the transfers as a matter of law. Commission payments, wages, or consulting fees

paid to parties that market, promote, and solicit a fraudulent scheme constitute fraudulent

transfers and the recipients of those payments do not give reasonably equivalent value.

In *Wing v. Holder*, a receiver sought the return of referral fees paid to a defendant for

bringing new investors into a fraudulent business.[177] The defendant argued that he provided

reasonably equivalent value through his efforts of bringing in additional money from investors

and answering questions from investors. The district court concluded that these efforts did not

---

[174] *Miller v. Wulf*, 84 F. Supp. 3d 1266, 1276 (D. Utah 2015) (emphasis in original).

[175] *Michelle Turpin & Assocs., P.C.*, 2016 WL 3661226, at *7 (quoting *Klein v. Cornelius*, No. 2:11-cv-01159-DAK, 2013 WL 6008304, at *3 (D. Utah Nov. 13, 2013)).

[176] Response at 23-26.

[177] *Wing v. Holder*, No. 2:09-cv-00118-DB, 2010 WL 5021087 (D. Utah Dec. 3, 2010); *Miller v. Taber*, No. 1:12-cv-0074-DN, 2014 WL 317938 (D. Utah Jan. 28, 2014) (stating defendant must return commissions because he obtained them illegally); *Wing v. Buchanan*, No. 2:08-cv-00803-DB, 2014 WL 1516001 (D. Utah Apr. 18, 2014) (stating the investors have consistently been required to return commissions they received for finding new investors); *Klein v. Andres*, No. 2:11-cv-00656-TS, 2013 WL 4809260 (D. Utah Sep. 10, 2013) ("this and other courts have rejected similar claims that payments made as compensation for drawing in new investors to a Ponzi scheme constitute an exchange of reasonably equivalent value.").

provide reasonably equivalent value to the fraudulent business. Rather, the defendant "essentially received money for prolonging the fraud of and on the [business entities]."[178] "It takes cheek to contend that in exchange for the payments he received the [fraudulent] scheme benefited from his efforts to extend the fraud by securing new investments."[179]

Similarly, in *Georgelas v. Desert Hill Ventures, Inc.*, the district court concluded that administrative and ministerial services provided by defendants to an entity that was run as a fraudulent investment scheme did not provide reasonably equivalent value under the UVTA.[180] The services the defendants provided included "updating investor spreadsheets, circulating statements and spreadsheets to investors, receiving and maintaining investor agreements, coordinating investor withdrawal requests, serving as the administrative conduit for questions from investors to [the entity], and maintaining the [entity's] website."[181] These services "illustrate[d] how intimately intwined [the defendants] were with enabling and furthering the investment scheme, and how they 'helped endow the scheme with a façade of legitimacy.'"[182] "While [the d]efendants may not have directly solicited new investors, the services they provided were central to convincing new and current investors the [fraudulent enterprise] was a profitable venture—thereby encouraging them to invest more money into the scheme."[183] "The defendants'

---

[178] *Holder*, 2010 WL 5021087, *2.

[179] *Id.*

[180] 510 F. Supp. 3d at 1074-1075. *Georgelas* involved a receivership over an entity that acted in a Ponzi scheme. *Id.* at 1069-1072. But this does not affect the analysis's application to this case. The UVTA's good faith defense applies to any transfer that is voidable under "Subsection 25-6-202(1)(a)" (formerly Subsection 25-6-5(1)(a) (2016)). Utah Code Ann. § 25-6-304(1) (formerly Utah Code Ann. § 25-6-9(1) (2016)).

[181] *Georgelas*, 510 F. Supp. 3d at 1074.

[182] *Id.* at 1075 (quoting *Sender v. Simon*, 84 F.3d 1299, 1308 (10th Cir. 1996)).

[183] *Id.*

actions which "ensur[ed] the smooth operation of the [fraudulent enterprise] and help[ed] to entice new investors into the scheme [could not] be considered reasonably equivalent value."[184]

Here, the Undisputed Material Facts demonstrate that the marketing, promoting, and sale of solar lenses perpetuated and expanded the Receivership Defendants' fraudulent scheme.[185] Defendant was paid commissions by IAS, RaPower, and Shepard Global for the sale of solar lenses.[186] And all consulting and other work performed by Defendant for IAS, RaPower, and Shepard Global was directly related to marketing and promoting the fraudulent solar lens technology.[187] With exception of the $10,200.00 loan from Shepard Global, all the transfers IAS, RaPower, and Shepard Global made to Defendant were for work that served only to perpetuate and expand the Receivership Defendant's fraudulent scheme. Like the defendants in *Georgelas*, the services Defendant provided to IAS, RaPower, and Shepard Global demonstrate how intimately intwined he was with enabling and furthering the fraudulent tax scheme, and how he helped provide the scheme with a façade of legitimacy.[188] Therefore, IAS, RaPower, and Shepard Global did not receive reasonably equivalent value from the transfers to Defendant as a matter of law. Shepard Global also did not receive reasonably equivalent value for the $10,200.00 loan to Defendant because it is undisputed that Defendant did not repay the loan.[189]

Additionally, reasonably equivalent value was not provided because the transfers to Defendant were illegal. "[A] bargain may be illegal by reason of the wrongful purpose of one or

---

[184] *Id*. at 1074-1075.

[185] *Supra*, Undisputed Material Facts ¶¶ 1-28 at 3-9.

[186] *Id*. ¶ 40 at 12, ¶ 43 at 12.

[187] *Id*. ¶¶ 30-32 at 10, ¶¶ 34-35 at 11, ¶¶ 38-40 at 12, ¶ 43 at 12.

[188] *Georgelas*, 510 F. Supp. 3d at 1075.

[189] *Supra*, Undisputed Material Facts ¶ 46 at 13.

both parties making it."[190] "This axiom is true even though the performances bargained for are not in themselves illegal and even though in the absence of the illegal purpose the bargain would be valid and enforceable."[191] The Undisputed Material Facts demonstrate that Defendant was hired to give IAS, RaPower, and Shepard Global a "veneer of legitimacy" in order to market, promote, and solicit the solar lens technology that was the primary component of the Receivership Defendants' fraudulent tax scheme.[192] Consequently, Defendant was "in utter complicity" with the Receivership Defendant's fraud.[193] "Those who entice investors into a [fraudulent] scheme or help perpetuate the scheme's fraudulent actions, 'whether knowingly or not, [are] just as involved, and even more involved, in furthering the scheme as a passive investor.'"[194] Therefore, Defendant "cannot benefit from any illegal contract or agreement with [IAS, RaPower, or Shepard Global] or for [his] contribution in keeping [the Receivership Defendant's] fraudulent scheme[] afloat."[195]

The Receiver is entitled to avoid the transfers to Defendant in the amount of $141,763.22. Judgment will be entered in the Receiver's favor and against Defendant on the Receiver's first cause of action under Utah Code Ann. § 25-6-202(1)(a) and Utah Code Ann. § 25-6-5(1)(a) (2016). It is unnecessary to address the Receiver's other arguments for summary judgment, and the Receiver's other causes of action are moot.

---

[190] *Georgelas*, 510 F. Supp. 3d at 1075 (quoting *Sender*, 84 F.3d at 1308).

[191] *Id*. (quoting *Sender*, 84 F.3d at 1308).

[192] *Supra*, Undisputed Material Facts ¶¶ 1-28 at 3-9, ¶¶ 30-32 at 10, ¶¶ 34-36 at 11, ¶¶ 38-40 at 12, ¶ 48 at 13.

[193] *Georgelas*, 510 F. Supp. 3d at 1075 (quoting *Sender*, 84 F.3d at 1307).

[194] *Id*. (quoting *Wing v. Dockstader*, No. 2:08-cv-00776-DB, 2010 WL 5020959, *6 (D. Utah Dec. 3, 2010)) (alteration in original).

[195] *Id*. (quoting *Dockstader*, 2010 WL 5020959, *6).

**The Receiver is entitled to prejudgment interest**

The Receiver is entitled to an award of prejudgment interest.[196] Defendant does not dispute the Receiver is entitled to prejudgment interest. For simplicity of calculation, prejudgment interest is awarded at the rate of 5% per annum[197] on the entire amount of $141,763.22 from the date the last transfer was received by Defendant, which was August 24, 2018.[198] The prejudgment interest that has accrued from August 24, 2018, through February 24, 2022, is $24,857.11.

## ORDER

IT IS HEREBY ORDERED that the Receiver's Motion for Partial Summary Judgment is GRANTED in part. Judgment will be entered in favor of the Receiver and against Defendant on the Receiver's first cause of action under Utah Code Ann. § 25-6-202(1)(a) and Utah Code Ann. § 25-6-5(1)(a) (2016). The Receiver's other causes of actions will be dismissed as moot.

The judgment entered in favor of the Receiver and against Defendant will be for the $141,763.22 Defendant received in transfers from IAS, RaPower, and Shepard Global, plus prejudgment interest in the amount of $24,857.11, and post judgment interest from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

---

[196] *Wing v. Gillis*, 525 Fed. App'x 795, 801 (10th Cir. 2013) (upholding award of prejudgment interest to receiver because prejudgment interest "compensates for the loss of use of the money" and "[u]nder fairness and equity principles, prejudgment interest was proper"); *Miller v. Kelley*, No. 1:12-cv-00056-DN, 2014 WL 5437023 (D. Utah Oct. 27, 2014) (awarding prejudgment interest to receiver who obtained judgment under Utah's voidable transfers act); *Klein v. Widmark*, No. 2:11-cv-01097-CW, 2016 WL 845317 (D. Utah Mar. 2, 2016) (same).

[197] *Gillis*, 525 Fed. App'x at 801 (finding court did not abuse discretion in awarding prejudgment interest at the rate of 5%).

[198] Summary of Payments to Matthew Shepard.

The Clerk is directed to close the case.

Signed July 5, 2022.

BY THE COURT

David Nuffer
United States District Judge